Good morning. Good morning. May it please the court. My name is Herman Frank. I am counsel for the plaintiffs in this appeal from a judgment of dismissal in a federal civil rights action. The first point I'd just like to make is there were two orders that we're talking about today. The first one was an order denying leave to amend, in which we sought to add into the complaint a violation of the familial relationship right arising under the Fifth and Fourteenth Amendment Substantive Due Process Clause. The second issue has to do with the court's order granting the defendant's motion for summary judgment and denying our motion for summary judgment. There's two issues there. And I would like to point out that if the court found there's that objective standard was met as far as what is needed for exigent circumstance to get into the home for a warrantless search, there's still the question of the right of the deputies to convince the wife of my client, Sanjit Singh, to leave and go away and file a restraining order. So there's kind of like there's an issue of getting into the house, and then there's an issue of what they did once they got in, which was to literally take his wife out of there. On the first issue, I'll just deal with the motion for leave to amend first. I would just like to point out there's a statement in the record by the trial judge in which he states that the State does not infringe upon this right by attempting to persuade an individual not to reside with relatives. And I would just like to point out to the Court that, to me, the issue here is whether they exceeded the persuasion concept and got into a look, you've got to go concept. Certainly, the deputies denied that. Their concept was, hey, we asked her, but the State talked to her for quite a while. It wasn't just we asked her, she answered, we left. In fact, it was we talked to her for quite a while, not only at the house, but later, after they left the house, there was another discussion at her uncle's place, Mr. Baines. There was a Detective Hendricks that got involved. So there was like three law enforcement officers at the home, and then a detective got involved, and then another woman got involved who works up the restraining order papers, which end up being filled with falsehoods. And so my concept I'd like to share with you is that there was a reasonable inference from the facts that the deputies overstepped mere persuasion, and that would be a factual issue that a jury should determine and would have rendered the proposed amendment not futile as the district court ruled. What's your best case that would support the theory? Actually, the cases are the, I mean, I would tell you Overton v. Bazzetta just talks generally about the familial right, and it includes a right to maintain certain familial relationships. And it's a, you know, that's, to me, that's the right at issue. And the other one we were relying on is Moore v. East Cleveland. In that case, there was actually an ordinance that said grandparents cannot live. It was more of a force. And we don't really quite have that, obviously, here. It's kind of a force. It's a, you've got three deputies convincing an immigrant woman that she's got to leave. That really would be my thesis on that. I'm really saying, though, that there's at least a reasonable inference from the facts and circumstances that gives rise to a factual issue that should be submitted to trial, and it was not futile. That's really my gist of our argument. And leave to amend should have been allowed, and it was error not to. That's my thesis on that. Getting to the other issue on the summary judgment motions, cross motions were filed. The exigent circumstance issue. You know, we emphasize facts. I hope you, well, the first one is that there was a two-day delay between, you know, my client, Vasant Sidhu, calls Deputy Garcia and basically invites him, come on out, see for yourself, she's fine. This idea that there's some big issue or whatever is not true. And the deputy actually speaks with the woman then, and she says she's okay. Deputies realize, though, sometimes people don't say things quite accurately on the phone. He wants to check into it a little more. That's fine. I don't complain about him doing that. He goes and sees Mr. Bain. Mr. Bain gives him a bunch of e-mails. He doesn't think there's a big issue right then so much that he's got to drive right to the house and go save this woman. Instead, and this is a part that I would like to focus on as a fact, he deliberately waits until a daytime period, a day later, when he knows the parents and the family won't be there. He knows that my clients go to work. The father and son work in a landscape business. The Vasant Sidhu works at Kaiser. They're aware, okay, they won't be there, so that's when we're going to go in and interview the woman. We'll get them when they're not there. That, right away, just told me they didn't think there was an emergency. I mean, they can go ahead and go there and talk to her. That's fine. They call it a knock and talk is the phrase they give in law enforcement. You knock on a door because you don't have a right to enter. The person opens the door, and they talk. So what they got to was the idea that... develops when they get there, and they see a figure who won't answer the door, and they have all this other background information. Isn't that when the perceived emergency occurred? Well, what do they hear? I mean, they get there, they see this furtive figure in the door, in the window there, and then they figure there's got to be something wrong because she's not opening the door. Well, one of the cases we talk about is you're not allowed to speculate. You need to have like a real articulable issue that we think that there's some grave problem. Not just a little problem, but like a big problem. Here's where I think you could find that we're right about that. They knew the son, the husband, wasn't there. They knew the parents weren't there. So whatever issue there was, was more about her not wanting to talk to law enforcement. And why would an immigrant woman not want to talk to law enforcement? And the bottom line is you're not supposed to speculate. Oh, maybe it's because of this or that. If you can't see that there is a real danger, you're not supposed to enter without a search warrant. That's kind of the rule, and it's got to be... It's not just I'm worried she might be having negative thoughts. You should be worried that there's something about to go down there that could be tragic. You know, someone's going to have some either serious bodily injury or death or something. And they just didn't have that. Now, had they known the husband was there and they saw two people through the window and it looked like someone's beating somebody, obviously that's a whole other scenario. I would submit that where you know that the husband isn't there, that the parents aren't there, and that you deliberately choose that day or that time of period to go there. What's in the evidence that they chose that day because they knew they were gone? I took... Usually, usually when one does a knock and talk, unless you're expecting narcotics or something under circumstances of disappearing evidence, it's done in the daylight hours. In fact, law enforcement really isn't supposed to serve warrants in nighttime. I understand the question. It's a good question. Thank you. I'm going to go back to the deposition of Deputy Garcia, which is Exhibit C to the Declaration I filed at page 89, talks about it. And he went there because another deputy, Chandra, had told him during the day the in-laws and husband worked. That's at page 90 at line 18 and 19. And they talked about if you go there when they're there, they may all leave. It's like if you go there, if you go there at a time when the parents are there, they somehow might all just take off. In other words, there could be some attempt to steal her away or something. So they went there knowing that, you know, they wouldn't be there and they went there because they felt they could speak with her more freely when they're not there. Okay. Point taken. So what's wrong with that? You know what? Absolutely nothing. They want to go there when the parents aren't there, that's fine. But they can't enter the house without a search warrant. You can do what's called a knock and talk. I think, as far as I understand Fourth Amendment jurisprudence, an officer is always allowed to walk up to a door with zero probable cause, knock on the door, and say, can we talk? And you have a right to close the door behind you, come in your front yard or not talk. You can say no thank you or what have you. So as far as them going there and trying to do a knock and talk during a time when they know nobody's going to be there except her, I don't have a problem with that. The problem I have is trying to use that. That's kind of a premeditated act. That's law enforcement. That's fine. They're allowed to be premeditated. But now to try to create out of that an exigent circumstance, that's where we draw the line. Okay. Your time has expired, but I'll give you a couple minutes for rebuttal. Any questions before you sit down? All right. Thank you. Thank you. Good morning, Your Honors. If it pleases the Court, my name is Martha Stringer. I represent the Solano County Sheriff's deputies. Would you mind moving your microphone down just a little bit? There you go. Too short. I represent the Solano County Sheriff's deputies who have been accused here, Seth Garcia, Denton Autry, and Craig Collins. And I guess I'll start with the emergency doctrine. And Mr. Frank keeps talking about the exigent circumstances doctrine. And they are similar, but they are different. And we are talking about the emergency situation. These three deputies did exactly what we would hope any police officer would do when faced with these circumstances. The idea was to just find out if Stacey Cower was well. And it was a rescue situation. It was not a situation involving criminal investigation or seizure of evidence. So the emergency, as you mentioned, arose not two days before, but when they went to the house, armed with the situation and the knowledge that they knew, and they see these furtive goings-on, which I think comes up in the Hunsberger case, and that's a perfectly legitimate reason to become concerned. They won't answer the door. They won't answer the phone. And they know that there's a young woman in there, at least this is what they've been told and what they have in their minds, who is afraid of her mother-in-law, afraid of physical violence, does not want to be there, would like out of this situation, is talking about killing herself. She's isolated. She's not supposed to email, but apparently gets away with it. She's not allowed to call. She has no car. She can't drive. And she is stuck up on this hillside. So they go to knock and talk. They go during the day. It doesn't matter whether they know that the other people won't be there, because that's why they're afraid she can't talk. Had she answered the door, they wouldn't have worried about going into the house. But she didn't. And they could see that there was somebody there. So they walk around to check the perimeter of the house, which I think it's under ‑‑ well, I'm not going to pick up the case right now. But that was perfectly fine. And then they see the open door and they enter. Now, I think you ‑‑ I assume you're conceding that if they hadn't seen the furtive goings on, the people in the house, they would not have the authority to go into the house. If they had gone to the door. Knocked. Nobody answered. And nobody answered and they had seen nothing else and it just appeared the house was empty. No, they could not have gone in. But they saw things going on in the house, a refusal to deal with them, and a concern that somebody may need protection. It could have been anybody in the house, but they were concerned about Stacy. So that is why they did what they did. Erring on the side of caution is what we want police officers to do when faced with a situation such as this, which could result in injury or death to a person inside the house. And Judge Carlton felt the same way. And I think his order sets it out quite succinctly as to why the emergency situation fits in this particular situation. As to the amendment to add this breakup of familial situations, first of all, it was late. And Judge Carlton held that, but also went on to the fact that it was futile. And certainly it is true that we freely grant amendments when the merits of the case should be determined, but this didn't have any merits, this particular amendment. Yes, the State cannot come in and enact regulations which will break up individuals who wish to stay together, but this is the opposite situation. We have people who don't want to be together, and Stacy's e-mails showed she didn't want to remain in this situation. And there is no evidence that they forced her to do anything. They stood by while she gathered her things and left. But that was all that there was to support this particular amendment. Yes, she went to, I think, a domestic violence counseling, but then we would have to hold the courts liable for breaking up relationships when they hand out information to victims of domestic violence or people who want divorces on how to do it. And family courts routinely provide this type of help to people who wish to get out of a violent situation or potentially violent situation. So, and I also, I noticed Mr. Frank talked about another woman and I think another detective who provided some help to Stacy on how to get herself out of the situation. They're not defendants. It's the three deputies who are defendants. And if you have any further questions, I have little else. Any further questions? I think we have your argument. Thank you. Thank you. And we'll give you two minutes for rebuttal. Thank you for giving me a little more time. I see I did use up my time. Sorry about that. On the exigent circumstance issue, and I do agree it's exigent, not emergency. I think it's vice versa. Okay. I would just like to point out it's a heavy burden to show it on their side. And furtive image in the window, if that's what the whole Fourth Amendment rides on, that's not much. And the ultimate irony of this is the people that she was afraid of, I mean, she looks out and sees a bunch of cops. Guess who she's afraid of? The cops. And that's really what it was about. She wasn't afraid. I mean, who else was there to be afraid of but them? And they figured, oh, that must mean there's something really bad going on inside. Well, what's bad going on is there are a bunch of cop cars in the driveway. She sees it and kind of freaks out and runs in and hides and doesn't want to talk to anybody. That's really what it was. And they speculated that it was something other than that. And I think that's the case that say you're not allowed to do that. On the familial, and a lot of these are actually whether that was a proper speculation or not, I would submit as a material issue of fact. On the familial relationship issue, whether they were overbearing or not in their, you know, three officers talking for a long time. And I would like to point out we actually did not know that had happened when we filed the complaint. We, my clients were not witnesses to that. They don't, they didn't have a clue. And we really didn't learn it until the depositions were taken that they had this, not a short discussion, but a fairly lengthy discussion with her. And there's an issue there of fact. Were they overbearing? I would look at it as that's the fact that a trial, a trial should determine. And it was not futile and it should have been allowed. Thank you. Very good. Thank you, counsel. The case is hereby submitted for decision.
judges: Thomas, Gould, Bybee